UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9777-RGK (PJWx) | Date | June 5, 2013 |
|---|---|---|---|
| Title | ***GANNON v. NETWORK TELEPHONE SERVICES, INC., et al.*** | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**     **(IN CHAMBERS) Order Re: Plaintiff's Motion to Certify Class (DE 36)**

## I.    INTRODUCTION

On November 15, 2012, Paul Gannon ("Plaintiff") filed a class-action Complaint against Network Telephone Services Inc. ("NTS"), Decade Communications Inc., Frontier Credit Inc., American Operator Services Inc., and several former or current executives of NTS (collectively, "Defendants"). Plaintiff alleges Defendants sent unsolicited text messages using auto-dialing equipment to the cell phones of Plaintiff and class members without their prior express consent in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii).

Presently before the Court is Plaintiff's Motion to Certify the Class. For the following reasons, the Court **DENIES** Plaintiff's Motion.

## II.    FACTUAL BACKGROUND

Defendant NTS is engaged in the business of telephone entertainment, in particular pay-per-call "phone sex" and "SexText." NTS operates approximately 45,000 telephone entertainment lines. The other defendants in this action provide support services to NTS or are employees of NTS.

Plaintiff alleges that starting late 2008, Defendants acted in concert to send mass text messages to cell phones, in order to promote NTS' services. NTS sends text messages only to individuals that have previously initiated contact with the company, generally by calling one of NTS' entertainment lines.

NTS informs potential callers and customers that by calling its entertainment lines, they may receive special offers via text message or communications from the company. When a call arrives to any of these lines, the caller hears recorded disclosures. The "mid-amble" message informs the caller, among other things, that by continuing the call he is consenting to be contacted by the company at the phone

number from which he is calling, but that he may opt-out of receiving such contact and advising how to do so. Callers are informed of various ways to opt-out of future communications, including via internet, phone, or mail. NTS also informs customers through print advertisements, its primary marketing vehicle, that callers will get a text message providing special offers.

The text messaging system is set up to send messages to callers who do not opt-out of receiving communications within approximately one week of the initial call. If the recipient does not opt-out or does not respond to the message, NTS sends a second text message approximately one week later. If the recipient does not respond to either text message, the recipient's telephone number is purged from the system and he will not receive another text message unless he initiates contact.

Plaintiff alleges that he accidentally called one of NTS' entertainment lines on August 13, 2012. Plaintiff called the line, however, immediately hung-up when he realized he had dialed the wrong number. Approximately three weeks later, Plaintiff received a promotional text message from NTS, which gave him the option of opting-out of future messages. He did not opt-out and subsequently received a second text message. As a result, Plaintiff contends Defendants violated the TCPA by sending these messages. Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful for any person or entity to make a call . . . (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system . . . ." *Id.*

## III. JUDICIAL STANDARD

A court may certify a class only if a plaintiff meets all the prerequisites of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *See* Fed. R. Civ. P. 23; *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588-89 (9th Cir. 2012). The plaintiff has the burden of showing that the Rule 23(a) and Rule 23(b) requirements are met. *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

"Frequently[,] [the] 'rigorous analysis' [of Rule 23] will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2551 (2011). In examining that "overlap," a court may "afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (citations and internal quotation marks omitted). However, "[a]lthough some inquiry into the substance of a case may be necessary . . . it is improper to advance a decision on the merits to the class certification stage." *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003) (citations and internal quotation marks omitted).

## IV. DISCUSSION

Plaintiff argues that the Court should certify the proposed class as all Rule 23 requirements are satisfied. For the following reasons, the Court **denies** Plaintiff's Motion.

### A. Identifiable and Ascertainable Class

As a threshold matter, Defendants contend that certification should be denied because Plaintiff's class definition does not set forth an identifiable and ascertainable class. The Court agrees.

Although not specifically mentioned in Rule 23(a), a plaintiff's class definition must set forth a class that is identifiable and ascertainable. *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163 (C.D. Cal. 2002). A class is identifiable and ascertainable if it is "administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). Further, "[a] class must be ascertainable

without inquiring into the merits of the case." *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 557 (C.D. Cal. 2012); *see Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995).

Here, Plaintiff seeks to certify a class consisting of "[a]ll persons in the United States and its Territories who received one or more *unauthorized* text messages sent by or on behalf of Defendants, or their agents or affiliates nationwide, where any such text message was sent on or after November 15, 2008." (Dkt 36-1, 2)(emphasis added).

However, Plaintiff's proposed class is unascertainable and unidentifiable. The Court cannot determine whether an individual is part of the class without extensive individual inquiry into the merits of Plaintiff's claim, which ultimately makes identification of the class administratively unfeasible. *Vandervort*, 287 F.R.D. at 557; *see Forman*, 164 F.R.D. at 403. Plaintiff's class definition would require individual inquiry into whether the potential class members consented to receiving text messages. Defendants provide evidence that some of the recipients may have consented, because callers were explicitly informed that they may be contacted by the company at the number from which they had called and provided an opportunity to opt-out of receiving such contact. Callers may have also seen NTS' advertisements, which included disclosures about receiving promotional messages. It is possible that some callers, having seen or heard NTS' disclosures, may have elected not to opt-out, because they wanted to receive promotional messages.

Based on these facts, the Court "would have to hold 'mini-trials' to determine who received" unauthorized text messages and thus, who is a class member. *Id.* Such circumstances render the proposed class not ascertainable or identifiable, because significant inquiry as to each individual class member would be required, as well as inquiry into the merits of the claim. *Id.*; *Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 236 (S.D. Ill. 2011). While there may be other class members who–like Plaintiff–called NTS by accident and hung-up before listening to the disclosures and opt-out procedure, the process to identify such class members would be even more unmanageable. *Xavier v. Philip Morris USA Inc.,* 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). Accordingly, certification is improper.

### B. The Requirements of Rule 23(b)(3) Are Not Satisfied

Even if the class were ascertainable, Plaintiff fails to demonstrate that common questions predominate and that class action is the superior method of adjudication under Rule 23(b)(3).

A court may certify a class action under Rule 23(b)(3) if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Class actions are justified when a single adjudication can resolve for all class members common questions that are a significant aspect of a case. *Hanlon*, 150 F.3d at 1022. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).

Plaintiff has not established that common issues predominate over individualized issues. Determining Defendants' liability for the TCPA claim would require individual inquiry into, amongst other things:

(1) whether the class member dialed one of NTS' entertainment lines purposely or by accident;
(2) whether the class member had seen any disclosures of NTS' text message practice in NTS' advertising;

(3) how many times the class member called;
(4) whether the class member heard the disclosure at the beginning of the call during the mid-amble, advising him about receiving future communications from NTS and advising how to opt-out; or
(5) whether the class member actually attempted to opt-out.

In light of these individual questions and others[1], Plaintiff has not established that common questions of law or fact predominate. *See Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997). This problem is further exacerbated by the fact that NTS operates 45,000 different entertainment lines, sent text messages to 3.6 million cell phone numbers from one of 25 different phone numbers. As a result, Plaintiff fails to satisfy the predominance requirement of Rule 23(b)(3).

Moreover, because Plaintiff fails to satisfy the predominance requirement, the Court finds a class action would not be superior to other methods for fairly and efficiently adjudicating the controversy. *Forman,* 164 F.R.D. at 404-05; *Virgus*, 274 F.R.D. at 235 (noting that punitive class members in TCPA actions would have a superior remedy in more speedy venues such as, for example, a small claims court). Therefore, certification is also improper based on Plaintiff's failure to meet the requirements of Rule 23(b)(3).

## V.     CONCLUSION

In light of the foregoing, the Court **DENIES** Plaintiff's Motion.

**IT IS SO ORDERED.**

:

Initials of Preparer

---

[1] Defendants raise other individual questions in their Opposition. (Dkt 54, 26.)